UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| D.O., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 15-048-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| STEVE BESHEAR, in his official | ) | **MEMORANDUM OPINION** |
| capacity as Governor of Kentucky, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the motion to dismiss or for summary judgment filed by Defendant Vickie Yates Brown Glisson, in her official capacity as Secretary of the Kentucky Cabinet for Health and Family Services ("CHFS").[1]  [Record No. 8]  For the reasons that follow, the defendant's motion for summary judgment will be granted and the plaintiffs' claims will be dismissed.

**I.**

Plaintiffs D.O. and A.O. are minor children who were removed from their mother's custody and permanently placed with Plaintiff R.O., who is a relative guardian of the minor children.  [Record No. 1-1, pp. 21–22]  The plaintiffs allege that they are entitled to foster care maintenance payments under federal law.  Congress passed the

---

[1]      Vickie Yates Brown Glisson was named as Secretary of the Kentucky Cabinet for Health and Family Services in December 2015, after the Complaint was filed.  The Clerk of Court is directed to replace Audrey Tayse Haynes with Vickie Yates Brown Glisson in the caption of the docket.

Adoption Assistance and Child Welfare Act of 1980 ("CWA"), which created Title IV-E of the Social Security Act, 42 U.S.C. §§ 620, *et seq.*, 670, *et seq.*, pursuant to its authority under the Constitution's Spending Clause. U.S. Const. art. I, § 8. A participating state is eligible for partial reimbursement of some of the state's expenditures on foster care maintenance payments made to those who qualify under Title IV-E. The plaintiffs argue that Title IV-E, specifically 42 U.S.C. §§ 671 and 672, creates a mandatory obligation for the state to make foster care maintenance payments to Plaintiff R.O., a relative guardian. The defendant admits that the state does not make payments to relative care providers under §§ 671 and 672. The plaintiffs argue that the defendants' failure to make these payments is a violation of the statute itself, and their equal protection and due process rights under the Kentucky and United States Constitutions. The plaintiffs seek declaratory and injunctive relief under 42 U.S.C. § 1983.

The defendant contends that the state is not required to make payments on behalf of (or to) these plaintiffs. First, the defendant claims that the state is immune from suit under the Eleventh Amendment and that the doctrine of *Ex parte Young* does not apply. *Ex parte Young*, 209 U.S. 123 (1908). Second, the defendant argues that the plaintiffs do not have a private right of action to enforce §§ 671 and 672, but even if they do, R.O. is not a foster care provider who qualifies as a party entitled to payments under the CWA. Thus, the defendant asserts that she has not violated the plaintiffs' due process rights. Further, the defendant claims that she has not violated the plaintiffs' right to equal protection because there is a rational basis for the classification.

-2-

The parties agreed to certain stipulated facts, which are adopted in this opinion. [Record No. 8-1]  The Commonwealth of Kentucky filed Dependency, Neglect and Abuse proceedings against the children's mother, C.O., in Clark County in 2012 when her minor boys were one and eight years old.  A.O. is now four.  He is a half-brother to D.O., who is now even years old.  C.O. has a history of using illegal drugs, including cocaine.  These cases were transferred to Fayette County after C.O. relocated there.  A.O. and D.O. were placed with R.O., their great aunt, at different times while the Dependency, Neglect and Abuse cases against C.O. were pending.  On September 10, 2014, the Fayette Family Court closed the family court cases so that the children would achieve "permanency."  The state family court granted joint legal custody of the children with the birth mother and R.O.  However, R.O. was granted physical custody and the children are assumed to continue to reside with her.

R.O. did not file for relief through any administrative proceedings with the CHFS before she filed suit in the Fayette Circuit Court.  R.O. currently receives $225.00 per month in K-TAP benefits, $110.00 per month in Supplemental Nutrition Assistance benefits and Medicaid health care benefits for her nephews to assist with the costs of childcare.

## II.

Rule 12(d) of the Federal Rules of Civil Procedure provides that if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record

of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein" without converting a motion to a summary judgment motion. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  The obligation to convert to a summary judgment motion is mandatory if matters outside the pleadings are not excluded by the Court. *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 503 (6th Cir. 2006) (applying Rule 12(d) to a Rule 12(c) motion); *see Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487–88 (6th Cir. 2009).  In this case, the Court will consider the parties' stipulated facts and affidavits submitted by the defendants.

Summary judgment is appropriate when there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002).  A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party.  That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).  In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Here, the parties agree that there are no genuine

issues of material fact in dispute.  Thus, the matter may be resolved the standards set forth in Rule 56 of the Federal Rules of Civil Procedure.

## III.

### A. *Ex parte Young*

The Eleventh Amendment bars "all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments by citizens of another state, foreigners or its own citizens." *Thiokol v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993) (internal citations omitted).  Suits for monetary relief against state officials sued in their official capacity are also barred, but the amendment "does not preclude actions against state officials sued in their official capacity for prospective injunctive or declaratory relief." *Thiokol*, 987 F.2d at 381 (citing *Ex parte Young*, 209 U.S. 123 (1908)).

Where relief is based upon past acts, and not continuing conduct, the relief does not fall under the doctrine of *Ex parte Young*.  209 U.S. at 155–56.  "[W]hen a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the [s]tate for sovereign immunity purposes." *Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 255 (2011).  However, the "doctrine is limited to that precise situation" and does not apply if the state is the real, substantial party in interest, "as when 'the judgment sought would expend itself on the public treasury or domain, or interfere with public administration.'" *Stewart*, 563 U.S. at 255 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984)).  However, "an ancillary effect on the state treasury is a permissible and often an inevitable

consequence of the principle announced in *Ex parte Young.*"  *Edelman v. Jordan*, 415 U.S. 651, 668 (1974).

"When a court addresses a claim made under *Ex parte Young*[,] it should simply ask 'whether a complainant alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *Westside Mothers v. Haveman*, 289 F.3d 852, 861 (6th Cir. 2002) (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Conner, J., concurring)).  Here, the plaintiffs have brought suit against the defendant in her official capacity for prospective injunctive and declaratory relief based on an alleged ongoing violation of federal law.  [*See* Amended Complaint, Record No. 1] The plaintiffs do not ask for damages or monetary relief for past violations, but ask that the defendant comply with the federal mandate to provide the same benefits to relative care providers as non-relative care providers.

While the relief sought would have an impact on the treasury, the impact is only ancillary to the extent that payment from the treasury would be required to comply with federal law in the future.  *Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005) (quoting *Papasan v. Allain*, 478 U.S. 265, 278 (1986)) ("[R]elief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury."); *see Edelman*, 415 U.S. at 668.  The relief requested is for future compliance with the federal statute, rather than monetary relief alone.  Thus, sovereign immunity does not bar this case and the plaintiffs' claims may proceed under the doctrine of *Ex parte Young*.

-6-

**B.  There Is No Private Right Of Enforcement Under The Subject Provisions.**

Having determined that the defendant is not immune from suit, the next question is whether the plaintiffs have asserted a claim for violation of a statute that creates a right privately enforceable against state officers through 42 U.S.C. § 1983.

"[T]o seek redress through § 1983 . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*."  *Blessing v. Freestone*, 520 U.S. 329, 341 (1997) (quoting *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989)).  As outlined in *Blessing*, a statute will be found to create an enforceable right if, after a particularized inquiry, the court concludes that (i) the statutory section was intended to benefit the putative plaintiff; (ii) it sets a binding obligation on a government unit, rather than merely expressing a congressional preference; and (iii) the interests the plaintiff asserts are not so "vague and amorphous that their enforcement would strain judicial competence."  *Westside Mothers v. Haveman*, 289 F.3d 852, 862–63 (6th Cir. 2002) (quoting *Blessing*, 520 U.S. at 341).

If the conditions identified above are met, a statute is presumed to create an "enforceable right unless Congress has explicitly or implicitly foreclosed" it.  *Westside Mothers*, 289 F.3d at 863.  Thus, if a provision meets the three factors of the *Blessing* test, there is a rebuttable presumption that the federal statutory right is enforceable under 42 U.S.C. § 1983; however, the claim may be dismissed if Congress has foreclosed a remedy under § 1983.  *See* 42 A.L.R. Fed. 2d 411, § 2 (2009).  "Anything short of an unambiguously conferred right" will not support a cause of action under § 1983.  *Gonzaga v. Doe*, 536 U.S. 273, 283 (2002).  "[I]t is *rights,* not the broader or vaguer

-7-

'benefits' or 'interests' that may be enforced under [Section 1983]." *Gonzaga*, 536 U.S. at 283.

Legislation enacted pursuant to Congress' spending powers, such as the CWA, can give rise to enforceable rights under 42 U.S.C. § 1983 if Congress "'speaks with a clear voice' and manifests an 'unambiguous' intent to confer individual rights." *See Gonzaga*, 536 U.S. at 279–80 (quoting *Pennhurst*, 451 U.S. at 17, 28, and n.21) (describing prior cases in which spending legislation gave rise to enforceable rights). Here, the plaintiffs correctly argue that the court must examine the individual sections at issue, rather than the statutory scheme as a whole, to determine whether there is a private right conferred. The majority of courts considering the CWA have determined that each provision must be reviewed under the *Blessing* test on an individual basis, rather than looking at the CWA as a whole.

The plaintiffs argue that the mandatory language in 42 U.S.C. § 672(a)(1) applies. That provision requires that "[e]ach State with a plan approved under this part shall make foster care maintenance payments on behalf of each child who has been removed from the home of a relative . . . into foster care if—(A) the removal and foster care placement met and the placement continues to meet, the requirements of [§ 672(a)](2); and (B) the child, while in the home, would have met the AFDC eligibility requirement of [§ 672(a)] (3)." Under § 672(a)(2)(C), the child must be placed in a "foster family home" or "child care institution." R.O. contends that the children's placement qualifies as a "foster family home," meaning that it "is licensed by the State in which it is situated or *has been*

*approved*, by the agency of such State having responsibility for licensing homes of this type, as meeting the standards established for such licensing." 42 U.S.C. § 672(b).

In addressing the first part of the *Blessing* analysis—whether the statutory section was intended to benefit the putative plaintiff—the Supreme Court in *Gonzaga* looked at three specific factors to be applied. *See Hughlett v. Romer-Sensky*, 497 F.3d 557, 562 (6th Cir. 2006); *Westside Mothers v. Olszewski*, 454 F.3d 532, 541–42 (6th Cir. 2006); *New York Citizens' Coalition for Children v. Carrion*, 31 F. Supp. 3d 512, 519 (E.D.N.Y. 2014). The statute must contain rights-creating language "that is unmistakably focused on the individuals benefitted." *Hughlett*, 497 F.3d at 562. Second, the court must consider whether the statute has an individual focus, as opposed to a systemwide or aggregate focus. *Hughlett*, 497 F.3d at 562. Third, a court must "consider[] the availability of a congressionally mandated federal review mechanism." *Carrion*, 31 F. Supp. 3d at 519. In other words, the "statute must lack an enforcement scheme for aggrieved individuals" to find that the statute creates an actionable right. *Hughlett*, 497 F.3d at 562.

In *Midwest Foster Care and Adoption Ass'n v. Kincade*, 712 F.3d 1190 (8th Cir. 2013), the United States Court of Appeals for the Eighth Circuit found that § 672(a) did not confer a private right of enforcement. The court initially concluded that § 672(a) did not contain "rights-creating language," because the focus of the language was on the persons or institutions being regulated rather than "in the terms of the individuals who benefit." *Midwest Foster Care*, 712 F.3d at 1196, 1198; *see also Carrion*, 31 F. Supp. 3d at 520. That provision requires that "[e]ach State with a plan approved under this part

shall make foster care maintenance payments on behalf of each child who has been removed from the home of a relative . . . into foster care if—(A) the removal and foster care placement met and the placement continues to meet, the requirements of [§ 672(a)](2); and (B) the child, while in the home, would have met the AFDC eligibility requirement of [§ 672(a)](3)."   42 U.S.C. § 672(a)(1).   While the text of § 672(a) identifies that the children are the ultimate beneficiaries, the focus of the provision and its subparts are the conditions precedent that trigger the federal government's obligation to reimburse funds expended by the state on the behalf of those beneficiaries.   *Id.*; *see* 42 U.S.C. § 672(a)(1).   "Where the statutory language primarily concerns itself with commanding how states are to function within a federal program, the statute is less likely to have created an individually enforceable right."   *Midwest Foster Care*, 712 F.3d at 1200 (citing *Walters v. Weiss*, 392 F.3d 306, 313 (8th Cir. 2004)).   Identification of the plaintiffs as the beneficiary of a federal law and, in this case, a reimbursement program, in the statutory language is insufficient to conclude that a statutory right has been conferred.   *Carrion*, 31 F. Supp. 3d at 522.   Instead, "to create private rights, [the statute's] text must be phrased in terms of the persons benefitted."   *Gonzaga*, 536 U.S. at 274.

For instance, "Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972 create individual rights because those statutes are phrased 'with an *unmistakable focus* on the benefited class.'"   *Gonzaga*, 536 U.S. at 284 (citations omitted).   Both statutes include the language "no person . . . shall . . . be subject to discrimination."   *Id.*   "There would be far less reason to infer a private remedy in favor

of individual persons if Congress, instead of drafting Title IX with an unmistakable focus on the benefited class, had written it simply as a ban on discriminatory conduct by recipients of federal funds. . . ."  *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690–93 (1979).

The plaintiffs do not dispute the validity of this analysis, but argue that the statutes at issue are more similar to those in *Wright* and *Wilder*, which the Supreme Court found gave rise to enforceable rights.  *Wright v. Roanoke Redevelopment and Hous. Auth.*, 479 U.S. 418 (1987); *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498 (1990).  In *Wright*, tenants were permitted to bring a § 1983 suit to "recover past overcharges under a rent-ceiling provision of the Public Housing Act, on the ground that the provision unambiguously conferred 'a mandatory [benefit] focusing on the individual family and its income.'"  *Gonzaga*, 536 U.S. at 280.  Similarly, in *Wilder*, claims under § 1983 were permitted by health care providers seeking to reimburse certain provisions of the Medicaid Act.  In both cases, the provisions at issue "explicitly conferred specific monetary entitlements upon the plaintiffs."  *Gonzaga*, 536 U.S. at 280.

In *Wright* and *Wilder*, the Supreme Court noted that "Congress spoke in terms that 'could not be clearer.'"  *Gonzaga*, 536 U.S. at 280.  But such is not the case here.  Using the *Blessing* test, as elaborated in *Gonzaga*, the statutes on which the plaintiffs rely do not evidence "an unambiguously conferred right to support a cause of action brought under § 1983."  *Gonzaga*, 536 U.S. at 283.

The plaintiffs argue that § 672 speaks to the interests of the child, who is the real party in interest.  Certainly, the children are the intended beneficiaries of the statutory

-11-

scheme.  However, the statute itself is not phrased in terms of giving the child, or the foster parent or facility, any rights or privileges.  The statute is phrased in terms of qualifying events for the state plan to receive reimbursement.  "Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons."  *Hughlett*, 497 F.3d at 563 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001)).  Thus, the statute does not have an unmistakable focus on the individual benefitted, but on the state as the regulated party. This weighs strongly against finding that the statute confers an individual right upon the plaintiffs.

Likewise, in looking to the second factor discussed in *Gonzaga*, the statutory language at issue has an aggregate, rather than individual, focus.  The Secretary of Health and Human Services is charged with promulgating regulations for the review of state programs to determine if there is "'substantial conformity' between the terms of the state plan and federal requirements, as well as between the state plan as written and the way in which it is implemented."  *Midwest Foster Care*, 712 F.3d at 1194; 42 U.S.C. § 1320a-2a(a), (b)(3)(A).  If a state's plan does not substantially comply, the Secretary of Health and Human Services may take corrective actions, including termination of federal funds. 42 U.S.C. § 1320a-2a(b)(3)(C).  "'[S]ubstantial compliance' provisions in Spending Clause legislation are inconsistent with individually enforceable rights, and indicate an aggregate or system-wide focus."  *Hughlett*, 497 F.3d at 564; *Blessing*, 520 U.S. at 343 ("[T]he [substantial compliance] standard is simply a yardstick for the Secretary to measure the system-wide performance.").  As discussed in *Midwest Foster Care* and

-12-

*Carrion*, the CWA only requires "substantial conformity" with its requirements to receive funding, which "counsels against the creation of individually enforceable rights." *Midwest Foster Care*, 712 F.3d at 1200–01; *Carrion*, 31 F. Supp. 3d at 522–23.

Additionally, "[w]hen the reference to the asserted individual right is in the context of describing the type of action that triggers a funding prohibition, an aggregate focus is evident." *Carrion*, 31 F. Supp. 3d at 523 (quoting *Gonzaga*, 536 U.S. at 288–89) (quotations omitted). In *Hughlett*, the United States Court of Appeals for the Sixth Circuit noted that the enforcement scheme of Title IV-D of the Social Security Act suggested that the remedy for noncompliance militated against finding that an enforceable right was conferred under that statutory scheme. *Hughlett*, 497 F.3d at 564. "In legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the state." *Hughlett*, 497 F.3d at 564 (quoting *Pennhurst*, 451 U.S. at 281).

In other words, an aggregate focus is indicated "when the statute couches the plaintiff's purported right in terms of what *state* actions will terminate federal funding." *Carrion*, 31 F. Supp. 3d at 523. In contrast to the decisions in *Wilder* and *Wright* in which there is no termination of funding associated with noncompliance, the failure to meet the requirements in § 672(a) "'triggers a funding prohibition' and the asserted right is only mentioned in the context of these funding prohibitions." *Midwest Foster Care*, 712 F.3d at 1202. Thus, the second factor weighs heavily against finding that Congress intended to create a private right of action.

-13-

The third factor of the first *Blessing* issue is whether Congress provided a "centralized federal review mechanism for individuals asserting statutory violations." *Midwest Foster Care*, 712 F.3d at 1202. Such a mechanism weighs against finding that Congress intended to create individually enforceable rights through the courts. *Midwest Foster Care*, 712 F.3d at 1202.

In this case, the plaintiffs challenge Kentucky's implementation of the plan itself. They argue that the plan incorrectly fails to provide benefits to these plaintiffs. The plan has been reviewed by the Secretary for Health and Human Services, as described above, although there are no means by which an individual can request individual federal review. 42 U.S.C. § 1320a-2a(a). Instead, each state is responsible for "granting an opportunity for a fair hearing before the State agency to any individual whose claim for benefits . . . is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 671(a)(12). Thus, while review of individual benefits is delegated to the State under § 671, the overall plan is reviewed and approved through centralized federal review. However, consistently with the analysis in *Midwest Foster Care* and *Carrion*, and because the other factors weigh against finding an unambiguous intent to create an individually enforceable right, the court concludes that the lack of a federal review mechanism is not alone sufficient to find that the first *Blessing* factor supports finding an individual right of action. *See Midwest Foster Care*, 712 F.3d at 1202; *Carrion*, 31 F. Supp. 3d at 525–27.

Because the first factor of the *Blessing* test weighs strongly against finding that the statute confers a private right of enforcement, it is unnecessary to address the remaining

conditions or the parties' arguments regarding whether the plaintiffs qualify as a "foster family home" under 42 U.S.C. § 672(c)(1) or whether the federal foster care maintenance program mandates payments to the plaintiffs by its terms. The Court concludes that there is no private right of action conferred by 42 U.S.C. §§ 671, 672 upon the plaintiffs.

## C. Due Process

The plaintiffs also contend that the defendant has deprived them of their due process guarantees under the Fourteenth Amendment to the United States Constitution and the corresponding guarantees under the Kentucky Constitution. "To determine whether a due process violation has occurred, the court must first decide whether plaintiffs had a property right that entitled them to procedural protections." *Hughlett*, 497 F.3d at 566 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985)). Only then can the court determine the process that is due. *Id.*

"To have a property interest in a benefit, a recipient must have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). This entitlement to a benefit must be grounded in some statute, rule, or policy. *Roth*, 408 U.S. at 576. The plaintiffs rely on 42 U.S.C. §§ 670–72 as the source of their asserted property rights. However, they do not have a right to payments under that statute, as described above. Thus, the plaintiffs have not established that they have a property interest in foster care payments for which they would be entitled to procedural due process and the defendant is entitled to summary judgment on this claim.

### D.  Equal Protection

The plaintiffs argue that the defendant's determination that they are not entitled to foster care maintenance payments violates the equal protection clause.  They contend that the children are similarly-situated to children in non-relative foster homes who are receiving payments.   Plaintiff R.O., the relative caregiver, also argues that she is similarly-situated to non-relative caregivers who are receiving foster care maintenance payments.

"The Equal Protection Clause protects against arbitrary classifications, and requires that similarly situated persons be treated equally." *Bowman v. United States*, 564 F.3d 765, 772 (6th Cir. 2008) (internal quotations and citation omitted).   The Kentucky Constitution mirrors the federal guarantees.  *See Vision Mining v. Gardner*, 364 S.W.3d 455, 465 (Ky. 2011).  "To state an equal protection claim, a party must claim that the government treated similarly situated persons differently."  *Braun v. Ann Arbor Charter Tp.*, 519 F.3d 564, 574 (6th Cir. 2008).  Generally, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).  "An equal protection claim is subject to rational basis review unless it involves infringement of a fundamental right or application to a suspect class."  *Bowman*, 564 F.3d at 772.  The plaintiffs have not argued that they are members of a suspect class or that a fundamental right is implicated by the statutory scheme.  The plaintiffs agree that their claim shall be evaluated under a rational basis inquiry.

-16-

"[G]overnmental action subject to equal protection scrutiny under the rational basis test must be sustained if *any* conceivable basis rationally supports it." *Fed. Commc'n Comm'n v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–14 (1993). There is no need for the government to "produce evidence to sustain the rationality of its action; its choice is presumptively valid and 'may be based on rational speculation unsupported by evidence or empirical data.'" *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty. Ohio*, 430 F.3d 783, 790–91 (6th Cir. 2005) (quoting *Beach Commc'ns*, 508 U.S. at 315).

The defendant contends that Congress and the Kentucky Legislature may rely on several rational bases for treating these groups differently. First, they argue that family members may need less financial incentive than other non-family foster care providers to take foster children into their homes. Moreover, the additional training and requirements for licensed foster-care providers  justifies treating them differently.

The defendant also argues that foster care payments are made to temporary caregivers, but do not apply once permanent placement is achieved. Thus, she asserts that the plaintiffs' permanent status prohibits them from qualifying for foster care benefits regardless of their relative placement status. Finally, the defendant contends that the state's need to maximize the state funds available, and to extend the federal funds allowable for reimbursement, is rational.

The Court agrees that the distinction recognized by Kentucky has a rational basis. And as the Supreme Court has recognized, "[i]f the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'"

-17-

*Dandridge v. Williams*, 397 U.S. 471, 485 (1970) (quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 (1911)). "[T]he Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients." *Id.*

In *Lipscomb v. Simmons*, 962 F.2d 1374 (9th Cir. 1992) (en banc), the Court of Appeals for the Ninth Circuit addressed claims by children in foster care that Oregon's statutory scheme allowing state-funded foster care benefits to children placed with nonrelatives, but disallowing benefits to children placed with relatives, violated the children's equal protection rights. The plaintiffs in *Lipscomb* were divided into two subclasses: (i) children who claimed that they were entitled to state funding even though their relatives were willing and financially able to care for them; and (ii) children who would be denied placements because their relatives are financially incapable of accepting the placement without the foster care benefits at issue. *Id.* at 1376–77. The court rejected the plaintiffs' arguments that heightened scrutiny applied. Instead, it examined whether Oregon had a rational basis for choosing to provide benefits to nonrelative foster parents but not relative foster parents. Oregon argued that it was maximizing the amount of money available for the benefit of foster care children. The court found that "[t]he state has a rational basis for not paying state funds to family members who provide foster care: The state wished to take advantage of relatives who are willing and able to take care of foster children regardless of whether they receive help from the state." *Id.* at 1380.

"The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific," yet those

classifications "will not be set aside if any state of facts reasonably may be conceived to justify it." *Dandridge*, 397 U.S. at 485 (internal quotations and citations omitted).

Likewise, Kentucky's need to maximize limited resources and to make the most of funds available for federal reimbursement provide a rational basis to justify treating these plaintiffs differently from children placed with certified foster families.  Based on the foregoing analysis, the defendant is entitled to summary judgment on the plaintiffs' claim alleging a violation of equal protection.

## IV.

For the reasons outlined above, it is hereby

**ORDERED** that the defendant's motion to dismiss or, in the alternative, for summary judgment [Record No. 8], shall be construed as a motion for summary judgment.  That motion is **GRANTED**.

This 23rd day of March, 2016.

Signed By:

*Danny C. Reeves*  DCR

United States District Judge

-19-